UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

LEROY K. BERRA,

                    Plaintiff,

        v.

COREY LYONS, in his individual
capacity, CHRISTOPHER BODE, in
his individual capacity, ADAM
VALDEZ, in his individual capacity,
DARRELL QUARLES, in his
individual capacity, RONALD VAN
TASSEL, in his individual capacity,
SCOTT HANEY, in his individual
capacity,

                    Defendants.

NO:  12-CV-0226-TOR

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

        BEFORE THE COURT are Defendants' Motion for Summary Judgment

(ECF No. 35) and Defendants' Motion to Exclude Expert Testimony of Winthrop

Taylor (ECF No. 33).  These matters were heard with oral argument on February 6,

2014.  Richard D. Wall appeared on behalf of the Plaintiff.  Heather C. Yakely

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 1

appeared on behalf of the Defendants.  At the conclusion of the hearing, the Court

granted Plaintiff leave to file a sur-reply brief on the issue of whether *Heck v.*

*Humphrey*, 512 U.S. 477 (1994), bars any of his claims.  That brief was received

on February 10, 2014.  The Court has reviewed the briefing and the record and

files herein, and is fully informed.

BACKGROUND

Leroy Berra ("Plaintiff") asserts claims under 42 U.S.C. § 1983 for wrongful

arrest and excessive force in violation of his rights under the Fourth and Fourteenth

Amendment.[1]  Plaintiff also asserts state common law claims for negligence

assault and battery.  These claims arise from two separate encounters between

Plaintiff and officers of the Spokane Police Department on March 1, 2009 and May

1, 2010.

Defendants have moved for summary judgment on all claims.  Defendants

argue that Plaintiff's § 1983 claims are barred by *Heck v. Humphrey*, 512 U.S. 477

---

[1] Plaintiff's First Amended Complaint also lists causes of action for "Violation of
Civil Rights" and "Violation of Due Process".  ECF No. 11 at ¶¶ 19-20.  At the
motion hearing, Plaintiff conceded that these claims are subsumed within his
claims for wrongful arrest and excessive force.  Accordingly, these claims will be
dismissed as duplicative.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 2

(1994), given that Plaintiff pled guilty to criminal charges arising from both incidents. Defendants further argue that they are entitled to qualified immunity on Plaintiff's constitutional claims, and that, in any event, there are no genuine issues of material fact for trial on any claim.

For the reasons discussed below, the Court concludes that Plaintiff's wrongful arrest claims are barred by *Heck* and must be dismissed without prejudice. Plaintiff's excessive force claims, on the other hand, are not *Heck*-barred. These claims, as well as Plaintiff's state law claims for negligence and assault and battery, present disputed issues of material fact that must be resolved by a jury. In light of these disputed issues of fact, Defendants are not entitled to qualified immunity on Plaintiff's constitutional claims.

## FACTS

The parties have presented starkly different accounts of two separate encounters between Plaintiff and officers of the Spokane Police Department ("SPD") on March 1, 2009 and May 1, 2010. The parties' respective versions of these incidents are set forth below.

**A. March 1, 2009 Incident**

On March 1, 2009, at approximately 11:20 p.m., Sergeant Jon Anderson[2] observed Plaintiff driving in the wrong direction on a one-way street in downtown

_____

[2] Sgt. Anderson is not a defendant in this action.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 3

Spokane.  Sgt. Anderson activated the emergency lights on his patrol vehicle, executed a U-turn, and began pursuing Plaintiff.  Plaintiff's vehicle was two blocks ahead traveling at approximately 30-35 mph.  Sgt. Anderson began to close the distance, but his progress was impeded by having to stop at every intersection for potential cross-traffic.

Officer Scott Haney joined the pursuit a short time later.  Ofc. Haney pulled his patrol vehicle behind Plaintiff's vehicle and activated his emergency lights and siren.  Plaintiff ran two consecutive red lights and did not stop.  Plaintiff then turned left onto a main arterial street and ran a third red light.  Moments later, Plaintiff slowed to approximately 20 mph and gradually pulled over to the side of the road.  What happened next is disputed.

According to Defendants, Ofc. Haney and Sgt. Anderson (who by then had caught up with Plaintiff's vehicle), ordered the occupants of the vehicle to show their hands using the loudspeakers on their patrol vehicles.  Plaintiff's passenger, Brian Boyd, immediately complied.  Plaintiff did not.  Ofc. Cory Lyons, who had just arrived on scene, exited his vehicle, drew his duty weapon, and yelled, "Driver of the vehicle, put your hands in the air," and "Driver, slowly open the driver's side door."  Lyons Aff., ECF No. 36, at ¶ 4.  Plaintiff did not obey.  *Id.*  Ofc. Lyons repeated the commands several more times, but Plaintiff did not comply.  *Id.*

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 4

Almost immediately thereafter, Plaintiff's vehicle began to rock back and forth. Lyons Aff., ECF No. 36, at ¶ 4. Ofc. Lyons repeated his commands again. *Id.* At that point the passenger, Mr. Boyd, leaned his head out the window and yelled, "He's trying to drive off, I'm fighting with him." *Id.* Mr. Boyd then pulled his head back inside, and the vehicle began to rock back and forth even harder. *Id.* Ofc. Lyons quickly returned to his patrol vehicle and pulled it directly in front of Plaintiff's vehicle to prevent Plaintiff from driving away. *Id.*

With Plaintiff's exit blocked, a fourth officer, Ofc. Christopher Bode, ran to the driver's side of the vehicle and shattered the front window with his flashlight. Lyons Aff., ECF No. 36, at ¶ 5. Ofc. Lyons then approached the driver's side window and cleared the broken glass from the window frame using his flashlight. Lyons Aff., ECF No. 36, at ¶ 6. Ofc. Lyons reached in through the opening, unlocked the driver's side door, and pulled the door open. Lyons Aff., ECF No. 36, at ¶ 7. He then ordered Plaintiff out of the vehicle and advised him that he was under arrest. *Id.*

When Plaintiff refused to exit, Ofc. Lyons reached inside the vehicle, grabbed hold of Plaintiff's head and left shoulder, and pulled him out. Lyons Aff., ECF No. 36-1, Ex. A. Plaintiff then got to his feet, grabbed Ofc. Lyons with both hands, pulled him close to his body, and said, "God protect me." *Id.* Ofc. Lyons delivered a knee strike to Plaintiff's stomach area, causing Plaintiff to double over.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 5

1    Lyons Aff., ECF No. 36, at ¶ 8.  Ofc. Lyons ordered Plaintiff to get on the ground.

2    When Plaintiff did not comply, Ofc. Lyons attempted to wrestle Plaintiff to the

3    ground.  Plaintiff braced his feet and legs and was able to remain upright.  Lyons

4    Aff., ECF No. 36, at ¶ 8.

5         At that point, Ofc. Haney and Ofc. Bode grabbed Plaintiff by both arms and

6    wrestled him to the ground.  Lyons Aff., ECF No. 36, at ¶ 9.  While Ofc. Haney

7    and Ofc. Bode immobilized Plaintiff's torso, Ofc. Lyons attempted to control

8    Plaintiff's legs.  *Id.*  Plaintiff lashed out with a series of kicks, one of which struck

9    Ofc. Lyons in the groin.  *Id.*  Ofc. Lyons then struck Plaintiff in the legs between

10   two and four times with his flashlight, using the flashlight as an improvised baton.

11   Lyons Aff., ECF No. 36, at ¶ 10.  This caused Plaintiff to momentarily stop

12   kicking.  Lyons Aff., ECF No. 36, at Ex. A.  Plaintiff soon began kicking violently

13   again, however, and Ofc. Lyons struck Plaintiff in the legs an additional two to

14   four times with his flashlight.  *Id.*  These strikes were ineffective.  *Id.*  Plaintiff

15   continued to struggle, all the while yelling "Keep them away from me," and "God

16   protect me."  *Id.*

17        Ofc. Lyons, Ofc. Haney and Ofc. Bode eventually managed to turn Plaintiff

18   on his stomach.  Lyons Aff., ECF No. 36, at Ex. A.  With Plaintiff still struggling,

19   the officers were unable to secure Plaintiff in handcuffs.  In an attempt to stop

20   Plaintiff from struggling, Ofc. Bode drew his taser and delivered a "drive stun" to

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 6

the middle of Plaintiff's back.  *Id.*  When this proved ineffective, Ofc. Lyons drew

his own taser and delivered a drive stun to Plaintiff's buttocks.  *Id.*  Another

officer, Ofc. Adam Valdez, simultaneously delivered a drive stun to the back of

Plaintiff's neck.  *Id.*  These simultaneous taser applications caused Plaintiff to

momentarily "tense up," and yet another officer, Corporal David Quarles, was

finally able to secure Plaintiff in handcuffs.  *Id.*  Ofc. Lyons and a sixth officer,

Ofc. Ronald Van Tassel, then placed Plaintiff in leg restraints.  *Id.*

As officers began searching Plaintiff's person incident to arrest, someone

noticed that Plaintiff's body was hot to the touch.  Officers called for medical

assistance, which arrived a short time later.  Plaintiff was transported to a local

hospital by ambulance.  Hospital staff subsequently determined that Plaintiff had a

fractured tibia and was likely recovering from "excited delirium."  Lyons Aff.,

ECF No. 36, at ¶ 15.  Plaintiff was later charged with third-degree assault on a

police officer and attempt to elude.

Plaintiff's version of events is markedly different.  Plaintiff asserts that he

pulled over immediately upon realizing that he was being pursued.  Berra Decl.,

ECF No. 47, at ¶¶ 2-4.  As soon as he came to a complete stop, his vehicle stalled.

Berra Decl., ECF No. 47, at ¶ 4.  Almost immediately thereafter, a police cruiser

pulled directly in front of his vehicle and blocked his exit.  Berra Decl., ECF No.

47 at ¶ 5.  Officers then ran up to his car and yelled at him to roll down his window

1    and put his hands outside the vehicle.  Berra Decl., ECF No. 47, at ¶ 6.  Plaintiff

2    attempted to comply, but the vehicle's electric window would not roll down since

3    the car had stalled while still in gear.  Berra Decl., ECF No. 47, at ¶ 7.

4        Shortly thereafter, Plaintiff heard someone outside the vehicle yell, "He's

5    going to run."  Berra Decl., ECF No. 47, at ¶ 7.  An officer then placed his hand on

6    the driver's side door handle and ordered Plaintiff to unlock the vehicle.  Berra

7    Decl., ECF No. 47, at ¶ 8.  Plaintiff attempted to unlock the door, but the electric

8    locks were not working.  Plaintiff tried to explain to the officer that he needed to

9    take the vehicle out of gear in order to roll down the window and unlock the door.

10   *Id.*  Plaintiff specifically denies that the car was rocking back and forth, that he and

11   Mr. Boyd were fighting, and that Mr. Boyd told police that he was trying to drive

12   away.  Berra Decl., ECF No. 47, at ¶¶ 8-9.

13       As Plaintiff reached for the gear shifter to put the car in park, an officer

14   broke out the driver's side window with a flashlight.  Berra Decl., ECF No. 47, at

15   10.  Immediately thereafter, Plaintiff was grabbed by an officer and pulled out of

16   the vehicle through the broken-out window.  *Id.*  Plaintiff, confused and frightened,

17   yelled at officers not to hurt him.  Berra Decl., ECF No. 47, at ¶ 11.

18       Two officers grabbed Plaintiff by either arm and held him upright.  While he

19   was still standing, a third officer began striking Plaintiff's legs with a flashlight.

20   Berra Decl., ECF No. 47, at ¶ 12.  The officers then wrestled Plaintiff to the ground

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 8

and slammed his face into the pavement.  Berra Decl., ECF No. 47, at ¶ 13.  While on the ground, Plaintiff was struck several more times and was shocked repeatedly with a taser.  *Id.*  Eventually, Plaintiff experienced a sudden "flash" and blacked out.  Berra Decl., ECF No. 47, at 15.  Plaintiff specifically denies resisting the officers in any way other than to protect himself from being physically assaulted.  Berra Decl., ECF No. 47, at ¶ 14.

Plaintiff regained consciousness in the ambulance on the way to the hospital.  While at the hospital, Plaintiff overheard a nurse inform two officers that he was being admitted for treatment of his injuries.  Berra Decl., ECF No. 47, at 17.  Upon learning this information, one officer said to the other, "Oh shit.  What do we do now?"  Berra Decl., ECF No. 47, at ¶ 18.

**B. May 1, 2010 Incident**

On May 1, 2010, at approximately 3:00 a.m., Ofc. Lyons responded to a complaint of a possible fight at an apartment complex in North Spokane.  The complainant advised that two males had been fighting and that one of them was now knocking on her sliding glass door.  Lyons Aff., ECF No. 36, at Ex. B.  The complainant described the person at her window as a black male wearing red clothing.  *Id.*  She further stated that the male appeared to be "on something."  *Id.*

Upon his arrival, Ofc. Lyons observed a black male wearing red clothing emerging from the apartment complex.  Lyons Aff., ECF No. 36, at ¶ 21.  Ofc.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 9

1 Lyons approached the subject and asked to speak with him.  The subject was the

2 Plaintiff, although Ofc. Lyons did not recognize him from the March 1, 2009

3 encounter at that time.

4        Plaintiff approached Ofc. Lyons and stood a few feet away.  Ofc. Lyons

5 pointed to a low brick retaining wall near the sidewalk and instructed Plaintiff to

6 sit down.  Lyons Aff., ECF No. 36, at ¶ 21.  Plaintiff did not immediately comply.

7 At that point, Ofc. Lyons observed that Plaintiff was "looking [him] up and down."

8 Ofc. Lyons believed that Plaintiff was "sizing [him] up."  Lyons Aff., ECF No. 36,

9 at ¶ 21.  Ofc. Lyons again asked Plaintiff to sit down and grabbed Plaintiff by his

10 left bicep.  *Id.*  Ofc. Lyons then felt Plaintiff's bicep muscle tense and noticed that

11 Plaintiff had balled his left hand into a fist.  *Id.*  An instant later, Ofc. Lyons "saw

12 [Plaintiff's] right hand move toward [him] across [Plaintiff's] chest as if [Plaintiff]

13 were trying to punch [him]."  *Id.*

14        Ofc. Lyons immediately moved behind Plaintiff and placed him in a lateral

15 vascular neck restraint.  He then deliberately fell backward, dragging Plaintiff to

16 the ground from behind.  Lyons Aff., ECF No. 36, at Ex. B.  A struggle ensued.

17 Plaintiff began punching at Ofc. Lyons.  *Id.*  Ofc. Lyons called for assistance over

18 his radio.  Lyons Aff., ECF No. 36, at ¶ 22.  Ofc. Lyons repeatedly told Plaintiff to

19 stop resisting and that he was under arrest, but Plaintiff continued to fight.  Lyons

20 Aff., ECF No. 36, at ¶ 23.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 10

1    Officer Jeremy McVay[3] arrived on scene approximately 30-40 seconds into

2  the struggle.  Lyons Aff., ECF No. 36, at ¶ 24.  Ofc. McVay attempted to control

3  Plaintiff's arms while Ofc. Lyons continued to apply the lateral vascular neck

4  restraint.  Plaintiff broke free of Ofc. Lyons's neck hold and wrapped his arms

5  around Ofc. Lyons's left leg.  Lyons Aff., ECF No. 36, at Ex. B.  Ofc. Lyons was

6  able to free himself from Plaintiff's grasp, but Plaintiff continued kicking and

7  punching at the officers while lying on his back.  *Id.*  Ofc. Lyons began striking

8  Plaintiff's legs repeatedly with his baton in an effort to stop him from kicking at

9  Ofc. McVay.  *Id.*

10    A few moments later, Officer Maurio Juarez[4] arrived on scene and began to

11  assist.  Ofc. McVay then withdrew from the struggle as a result of having suffered

12  a broken finger.  Lyons Aff., ECF No. 36, at ¶ 25.  Ofc. Lyons continued to strike

13  Plaintiff with his baton.  Lyons Aff., ECF No. 36, at Ex. B.  Shortly thereafter,

---

[3] Officer McVay was initially named as a defendant, but was dismissed by

stipulation of the parties on December 23, 2013.  ECF No. 42.

[4] Officer Juarez was also dismissed as a defendant by stipulation of the parties on

December 23, 2013.  ECF No. 42.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 11

1  Corporal David Beckley[5] arrived and began providing assistance.  Lyons Aff., ECF

2  No. 36 at ¶ 26.

3        The officers eventually managed to turn Plaintiff over onto his stomach and

4  place one of his arms in handcuffs.  *Id.*  Plaintiff's other arm, however, remained

5  pinned under his body.  Lyons Aff., ECF No. 36, at ¶ 26.  After several failed

6  efforts to free Plaintiff's arm, Ofc. Lyons drew his taser and administered two

7  drive stun applications to Plaintiff's lower back.  Lyons Aff., ECF No. 36, at ¶ 27.

8  Those applications produced little effect.  *Id.*  Ofc. Lyons then administered a third

9  drive stun to the bare skin on the back of Plaintiff's neck.  *Id.*  When this third

10  application produced no effect, Ofc. Lyons cast his taser aside.  *Id.*  Ultimately,

11  Cpl. Beckley was able to pry Plaintiff's arm out from under his torso using a baton.

12  *Id.*  Plaintiff was immediately handcuffed and placed in leg restraints.  *Id.*

13        Plaintiff was subsequently transported to the Spokane County Jail and

14  booked on two counts of third-degree assault on a police officer.

15        Once again, Plaintiff has presented a much different version of events.

16  According to Plaintiff, the initial complaint was a misunderstanding.  Plaintiff

17  maintains that he was playing video games on an Xbox at a friend's apartment

18  when he decided to step outside to smoke a cigarette.  Berra Decl., ECF No. 47, at

19  ¶ 19.  When Plaintiff finished smoking and attempted to re-enter the apartment, he

20  _____

[5] Corporal Beckley is not a defendant in this action.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 12

1    found the front door locked. *Id.* Plaintiff went around the back of the apartment

2    complex and knocked on a sliding glass door which he believed opened into his

3    friend's unit. *Id.* When no one answered, Plaintiff decided to leave. *Id.*

4          As Plaintiff was leaving the apartment complex, he was stopped by Ofc.

5    Lyons. Berra Decl., ECF No. 47, at ¶ 20. Ofc. Lyons asked what he had been

6    doing, to which Plaintiff responded that he had just been at a friend's house and

7    was now leaving. Berra Decl., ECF No. 47, at ¶ 21. At Ofc. Lyons's request,

8    Plaintiff produced his photo identification card. Berra Decl., ECF No. 47, at ¶ 22.

9    Ofc. Lyons then turned to walk back to his patrol car, stopped short, and turned

10   back around. *Id.* Ofc. Lyons walked back up to Plaintiff and ordered him to sit

11   down on a brick retaining wall. *Id.* Plaintiff refused to sit down, explaining that

12   the brick wall was wet. Berra Decl., ECF No. 47, at ¶ 23. Ofc. Lyons then ordered

13   Plaintiff to sit down on the ground under a nearby tree. *Id.* Plaintiff once again

14   refused, stating that the ground under the tree was also wet and very muddy. *Id.*

15         Ofc. Lyons then raised his flashlight, "charged" directly at Plaintiff, and

16   tackled him to the ground. Berra Decl., ECF No. 47, at ¶ 24. Plaintiff curled up

17   into a ball to protect himself. Berra Decl., ECF No. 47, at ¶ 25. Ofc. Lyons

18   proceeded to punch and kick Plaintiff, and was later joined by another officer.

19   Berra Decl., ECF No. 47, at ¶ 26. Plaintiff was placed in handcuffs and thereafter

20   shocked with a taser at least twice. Berra Decl., ECF No. 47, at ¶ 27. Plaintiff

blacked out after being tased the second time in the back of the head.  Berra Decl., ECF No. 47 at ¶ 30.  Plaintiff later awoke in the back of a police car.  *Id.*  Plaintiff expressly denies having punched or kicked at any of the officers during the encounter.  Berra Decl., ECF No. 47, at ¶ 31.

DISCUSSION

**I.  Defendants' Motion for Summary Judgment**

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  In ruling upon a summary judgment

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 14

motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

## A. Application of *Heck v. Humphrey*

Defendants argue that Plaintiff's wrongful arrest and excessive force claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), given that Plaintiff pled guilty to criminal charges in connection with both incidents. "When a plaintiff who has been convicted of a crime under state law seeks damages in a § 1983 suit, 'the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011) (quoting *Heck*, 512 U.S. at 487). "If the answer is yes, the suit is barred." *Id.* In other words, when a criminal conviction "is fundamentally inconsistent with the unlawful behavior for which [§] 1983 damages are sought, the [§] 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam).

### 1. Wrongful Arrest Claims

The Court agrees that Plaintiff's wrongful arrest claims are barred. By pleading guilty to riot and reckless driving in connection with the first incident, and to third-degree assault in connection with the second incident, Plaintiff has

effectively admitted that the officers had probable cause to arrest him on both

occasions.  *Smithart*, 79 F.3d at 952 (holding that guilty plea to assault with a

deadly weapon foreclosed a § 1983 claim for wrongful arrest, since a favorable

judgment on the wrongful arrest claim would necessarily imply the invalidity of

the guilty plea).  Unless and until these convictions are set aside, any § 1983 claims

for wrongful arrest are barred.  *Heck*, 512 U.S. at 487.  These claims are therefore

dismissed without prejudice.[6]

### 2. Excessive Force Claims

Plaintiff's first excessive force claim, which arises from the March 1, 2009

incident, is not *Heck*-barred.  Although Plaintiff was initially charged with third-

degree assault in connection with this incident, he ultimately pled guilty to one

count of reckless driving in violation of RCW 46.61.500(1) and one count of

felony riot in violation of RCW 9A.84.010(1)(b).[7]  ECF No. 68-1, 68-2.  A

---

[6] *Heck*-barred claims must be dismissed without prejudice so that the plaintiff may "reassert his claims if he ever succeeds in invalidating his conviction."  *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir.1995) (per curiam).

[7] Plaintiff pled guilty to these charges pursuant to *In re Barr*, 102 Wash.2d 265, 270 (1984), which allows a defendant "to plead to a related lesser charge that was not committed in order to avoid certain conviction for a greater offense."

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 16

favorable judgment on this claim would not "necessarily imply" the invalidity of either conviction.  Unlike third-degree assault, reckless driving and felony riot are not offenses committed against a police officer.  As a result, the lawfulness of the charging officer's actions is not at issue.  Whereas third-degree assault requires a showing that an officer was engaged in the lawful exercise of his or her duties at the time of the offense, reckless driving and felony riot can be proven entirely independently of the charging officer's conduct.  *Compare* RCW 9A.36.031(1)(g) ("A person is guilty of assault in the third degree if he or she . . . [a]ssaults a law enforcement officer or other employee of a law enforcement agency *who was performing his or her official duties* at the time of the assault."), *with* RCW 46.61.500(1) ("Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.") and RCW 9A.84.010(1) ("A person is guilty of the crime of riot if, acting with three or more other persons, he or she knowingly and unlawfully uses or threatens to use force, or in any way participates in the use of such force, against any other person or against property.") (emphasis added).  In short, Plaintiff's convictions for reckless driving and felony riot do not implicate the lawfulness of Defendants' conduct at the time of the offenses.  As a result, this claim is not barred under *Heck*.

Plaintiff's second excessive force claim, by contrast, does implicate the lawfulness of Defendants' conduct.  Because Plaintiff pled guilty to two counts of

third-degree assault in connection with the May 1, 2010 incident, a judgment in his favor could potentially imply that Defendants acted unlawfully when they used force to effectuate Plaintiff's seizure. *See* RCW 9A.36.031(1)(g). To determine whether this claim is barred, the Court must address whether the factual basis for Plaintiff's *claim* is separate from the factual bases for his *convictions*. *See Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (en banc) (excessive force claim not barred by conviction for resisting arrest where the alleged use of excessive force "occurred *subsequent to* the conduct on which [the plaintiff's] conviction was based") (emphasis in original); *Hooper*, 629 F.3d at 1134 (conviction for resisting arrest does not bar excessive force claim when the conviction and claim "are based on different actions" during the course of a single encounter). Stated differently, the relevant inquiry is whether the precise use of force that Plaintiff claims was unconstitutional was precipitated by the precise conduct that resulted in Plaintiff's third-degree assault convictions. If the allegedly unconstitutional force was used in response to the same conduct upon which Plaintiff's convictions are based, then the claim is barred; in this circumstance, the convictions operate as an admission that Defendants acted lawfully—that is to say, that they did not violate Plaintiff's Fourth Amendment rights—in responding to the assaultive conduct. *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1044-45 (9th Cir. 2012). If the allegedly excessive force was *not* precipitated by Plaintiff's assaultive conduct, however, the claim is

not barred.  In that event, Plaintiff's third-degree assault convictions are entirely

unrelated to the allegedly excessive force and therefore do not operate as an

admission that Defendants' use of force was lawful.  Indeed, this situation leaves

open the possibility that *both* parties acted unlawfully at different times during the

encounter.  *Hooper*, 629 F.3d at 1133-34.

Since Plaintiff entered *Alford*[8] pleas to both charges, the factual basis for his

convictions has never been formally adjudicated.  *See* ECF No. 68-3 at 8 ("I

maintain my innocence but believe that if this matter went to trial I could be

convicted by a jury.").  Accordingly, the Court must construe the facts in the light

most favorable to Plaintiff to determine whether the claim is barred.  *See Smithart*,

79 F.3d at 952 (construing allegations in light most favorable to § 1983 excessive

force plaintiff who had previously entered *Alford* plea to assault with a deadly

weapon).  When so construed, the evidence precludes a finding that the claim is

*Heck*-barred.  Plaintiff claims that Ofc. Lyons charged at him, wrestled him to the

ground, and started punching and kicking him immediately after he refused to sit

down on a wet retaining wall or the wet ground under a tree.  Berra Decl., ECF No.

47, at ¶¶ 24-26.  Plaintiff expressly denies having engaged in any assaultive

---

[8]  *North Carolina v. Alford*, 400 U.S. 25 (1970), which holding was adopted by the

Supreme Court of Washington in *State v. Newton*, 87 Wash.2d 363 (1976).

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 19

behavior, and maintains that "any actions [he] took during the incident were solely for the purpose of trying to protect [himself] from being repeatedly punched, kicked, struck with a baton, and TASED."  Berra Decl., ECF No. 47 at ¶ 31. Under this version of events, the allegedly unconstitutional force was *not* precipitated by the conduct for which Plaintiff was convicted of third-degree assault.  Although the factual basis for the third-degree assault convictions remains unclear, Plaintiff's version of the evidence alleges that Ofc. Lyons began using force before Plaintiff took any action that could be construed as assaultive. Accordingly, the Court concludes that Plaintiff's second excessive force claim is not barred under *Heck*.

## B. Disputed Issues of Material Fact Preclude Summary Judgment on Plaintiff's Excessive Force Claims

In evaluating a Fourth Amendment claim of excessive force under 42 U.S.C. § 1983, courts must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* at 396 (quotation and citation omitted).  "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 20

application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quotation and citation omitted). This calculus must account for the fact that police officers are often "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Consequently, the objective reasonableness of an officer's use of force must be judged from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). At bottom, the question is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him or her. *Id.* at 397.

Courts in the Ninth Circuit follow a three-step analysis in analyzing the reasonableness of an officer's use of force:

> First, we must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted. Next, we must evaluate the government's interests by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape. Third, we balance the gravity of the intrusion on the individual against the government's need for that intrusion. Ultimately, we must balance the force that was used by the officers against the need for such force to

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 21

determine whether the force used was "greater than is reasonable under the circumstances.

*Espinosa v. City and Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (internal quotations and citations omitted). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *City of Hemet*, 394 F.3d at 701 (quotation and citation omitted).

Defendants argue that there are no genuine issues of material fact as to the reasonableness of their use of force. The Court is not persuaded. Plaintiff has submitted evidence which directly contradicts Defendants' accounts of both incidents. In his sworn declaration, Plaintiff expressly denies having resisted arrest or engaged in assaultive behavior on either occasion. Berra Decl., ECF No. 47, at ¶¶ 9, 14, 24, 31. Plaintiff also disputes several of Defendants' key factual claims. For example, with regard to the March 1, 2009 incident, Plaintiff denies that his car was rocking back and forth and denies that his passenger told officers that he was attempting to flee. Berra Decl., ECF No. 47, at ¶¶ 10, 11. Plaintiff further maintains that he attempted to explain to officers that he was unable to comply with their orders to show his hands and exit the vehicle due to the fact that his vehicle had stalled while still in gear. Berra Decl., ECF No. 47, at ¶ 8. With

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 22

1  regard to the May 1, 2010 incident, Plaintiff categorically denies having tried to

2  punch or otherwise assault Ofc. Lyons.  Berra Decl., ECF No. 47 at ¶¶ 24, 31.

3  According to Plaintiff, Ofc. Lyons simply "charged" at him and tackled him to the

4  ground after he refused to sit down on a wet retaining wall or the wet ground under

5  a tree.  Berra Decl., ECF No. 47, at ¶ 24-25.  In sum, Plaintiff has presented

6  evidence from which a rational jury could find that Defendants used force in

7  excess of what would have been objectively reasonable under the circumstances.

8  Whether this evidence is worthy of credence is for the jury to decide.

9       Defendants ask the Court to disregard the above evidence because it

10  contradicts Plaintiff's sworn deposition testimony.  According to Defendants,

11  Plaintiff had "virtually no recollection" of either incident when questioned during

12  his deposition and should not be permitted to rely upon a contradictory and self-

13  serving declaration to avoid summary judgment.  ECF No. 57 at 14-15; *see also*

14  ECF No. 35 at 17 ("Plaintiff failed to set forth any evidence of [the] purported use

15  of force other than his own vague and speculator [sic] testimony.  As set forth in

16  the statement of facts, he simply has no recollection whatsoever of these events.").

17       The argument that Plaintiff had "no recollection whatsoever" of the two

18  encounters during his deposition fundamentally mischaracterizes his testimony.

19  Plaintiff did not testify that he could not remember any specific details of the two

20  encounters.  Instead, Plaintiff answered "no" to a series of pointed questions about

whether he could "recall" incriminating actions attributed to him by the responding

officers.  The following exchange is illustrative:

> Q:  Do you recall trying to get up off the ground when there were
> four or five officers trying to put you in handcuffs?
>
> A:  No.
>
> Q:  Do you recall being told not to resist?
>
> A:  No.
>
> Q:  Do you recall, when you were on the ground, being told to
> give the officers your hands?
>
> A:  No.  I was – I was screaming and yelling in pain.  I heard
> nothing.
>
> Q:  So, you recall no commands that were given to you by the
> officers.
>
> A:  No.
>
> Q:  Do you recall kicking prior to being placed in leg restraints?
>
> A:  No, I don't.  I – I'm still trying to figure out how I'm expected
> to be kicking with a leg that's completely and totally
> shattered, how I'm supposed to use that to stand up, try to get
> up, or to kick.  I'm sorry, I probably shouldn't . . .
>
> Q:  Do you recall grabbing one of the officers and pulling him
> close to your chest?
>
> A:  No, ma'am.
>
> *    *    *
>
> Q:  Do you recall breaking one of the officer's fingers?

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 24

1   A:  No, ma'am.  Like I said, the whole time, I was – I was like

2   this.  I was just balled up.  I – you know, I think if – what my
    belief is, I mean, if he did break his finger – which I heard
    there was a report that he did.  I never saw it or anything, but I

3   believe if he did, it was from punching me, hitting me.

4   Q:  Do you recall trying to punch one of the officers?

5   A:  No, ma'am.

6                              *    *    *

7   Q:  Do you recall kicking one of the officers in the chest?

8   A:  No.

9   Q:  Do you recall kicking them in the face?

10  A:  No.

11  Q:  Do you recall being tased anywhere other than your neck or
    your shoulder?

12
    A:  No.
13
    Q:  Do you recall whether you continued to react once you were
14  placed in handcuffs?

15  A:  What do you mean, "react"?

16  Q:  Were you kicking?

17  A:  No.

18  Q:  Were you moving around after you were placed in handcuffs?

19  A:  Was I moving?  I [suppose] I was moving.  I don't know.  I
    mean, what do you mean by "moving"?  In a resisting

20  manner?  No.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 25

1  Berra Dep., ECF No. 37-1 at Tr. 80-81, 85-86, 88.

2      The only fair reading of this testimony is that Plaintiff was denying the

3  actions attributed to him by the responding officers.  Although defense counsel

4  prefaced her questions with "Do you recall . . .," the questions do not touch upon

5  Plaintiff's ability to remember details of the two encounters.  Instead, counsel

6  appears to have been engaged in an aggressive line of questioning designed to

7  elicit damaging admissions.  As a result, the Court reads the majority of Plaintiff's

8  responses to state "I don't recall that because *that never happened*," rather than "I

9  don't recall *whether or not* that happened."  When read in this context, there are no

10  material inconsistencies between Plaintiff's deposition testimony and his sworn

11  declaration.

12      Defendants also appear to suggest that their use of force was reasonable as a

13  matter of law because they had probable cause to arrest Plaintiff on both occasions.

14  *See* ECF No. 35 at 13-14 ([T]here was probable cause to arrest Plaintiff.  As a

15  result . . . Plaintiff had no right to resist arrest.  It is clear from the facts that it was

16  [Plaintiff's] actions which caused the use of physical force against him.  Thus, the

17  force used against him was not objectively unreasonable[.]").

18      Assuming for the sake of argument that Defendants had probable cause to

19  arrest Plaintiff on both occasions—and that Plaintiff physically resisted—it does

20  not follow that Defendants' use of force was objectively reasonable.  Indeed, this

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 26

argument is foreclosed by longstanding Supreme Court precedent.  *See Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985) (rejecting argument that police officer with probable cause may use any force necessary to effectuate a lawful arrest); *Graham*, 490 U.S. at 396 (emphasizing that the reasonableness of force used to effectuate a lawful arrest or investigatory stop "is not capable of precise definition or mechanical application" and must be evaluated under the totality of the circumstances) (quotation and citation omitted).

Under *Graham*, the fact that Plaintiff resisted a lawful arrest is merely one of several factors to be considered in assessing the reasonableness of Defendants' use of force under the totality of the circumstances.  *See* 490 U.S. at 396 (evaluating reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").  Accordingly, the existence of probable cause and the fact that Plaintiff physically resisted does not automatically render Defendants' use of force objectively reasonable.  A jury must decide whether, based upon their assessment of the disputed evidence, Defendants' use of force was objectively reasonable.

///

///

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 27

**C. Disputed Issues of Material Fact Preclude a Finding of Qualified Immunity**

Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  In evaluating a state actor's assertion of qualified immunity, a court must determine (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right.  *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Courts may exercise their sound discretion in deciding which of these two questions to address first.  *Pearson*, 555 U.S. at 236.  If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct.  *Glenn v. Washington Cnty.*, 673 F.3d 864, 870 (9th Cir. 2011).  "If the law did not put the officer on notice that his conduct would be *clearly unlawful*, summary judgment based on qualified immunity is appropriate."  *Saucier*, 533 U.S. at 202 (emphasis added).

The same genuine issues of material fact that preclude summary judgment on Plaintiff's excessive force claims preclude dismissal on qualified immunity

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 28

grounds.  Plaintiff's version of the evidence establishes that, on March 1, 2009,

Defendants dragged him from his vehicle through a broken-out window, delivered

bone-crushing blows to his legs, and shocked him with their tasers until Plaintiff

lost consciousness.  His allegations also include that Ofc. Lyons tackled him to the

ground and began punching and kicking him when he simply refused to sit down

on a wet retaining wall or wet ground underneath a tree.  If credited by a jury, this

evidence could support a finding that Defendants used objectively unreasonable

force under the circumstances confronting them during both incidents.  Accepted

as true, this evidence further establishes that the Fourth Amendment right at issue

was clearly established as of the dates of the two incidents.  *See, e.g.*, *Garner*, 471

U.S. at 7-8; *Graham*, 490 U.S. at 396.

### D. Plaintiff's State Law Claims Survive Summary Judgment

Plaintiff's state law negligence and assault and battery claims are grounded

in the same allegations of police misconduct discussed above.  Just as there are

disputed issues of fact concerning the reasonableness of Defendants' use of force,

there are disputed issues of fact as to whether Defendants breached a duty of care

owed to Plaintiff and whether Defendants intentionally caused a harmful or

offensive contact with Plaintiff's person (or placed Plaintiff in imminent

apprehension thereof).  Thus, Plaintiff's state law claims must proceed to trial.

///

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 29

**II. Motion to Exclude Expert Witness Winthrop Taylor**

The admission of expert witness testimony at trial is governed by Federal Rule of Civil Procedure 702.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court explained that trial courts must perform a "gatekeeping" function to ensure that expert testimony conforms to Rule 702's relevance and reliability requirements.  509 U.S. 579, 597 (1993).  *Daubert* identifies four non-exclusive factors a court may consider in assessing the relevance and reliability of expert testimony: (1) whether a theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential error rate and the existence and maintenance of standards controlling the theory or technique's operation; and (4) the extent to which a known technique or theory has gained general acceptance within a relevant scientific community.  *Id.* at 593-94.  These factors are not to be applied as a "definitive checklist or test," but rather as

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE EXPERT TESTIMONY ~ 30

guideposts which "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).  The ultimate objective is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

Plaintiff has proffered Winthrop Taylor as a rebuttal expert in the field of police practices and procedures.  Defendants have challenged the admissibility of Mr. Taylor's anticipated testimony on several grounds.  These challenges can generally be grouped into three categories: (1) that Mr. Taylor lacks "current and relevant experience" in the field of police practices and procedures; (2) that Mr. Taylor's opinions do not rebut any of Defendants' expert's opinions; and (3) Mr. Taylor's opinions improperly invade the province of the jury.

Defendants' challenge to Mr. Taylor's qualifications is not well-taken.  Mr. Taylor was a certified police officer for 33 ½ years (1971-2004) and is a former Chief of Police for the City of Prosser, Washington.  Mr. Taylor also holds a master's degree in criminal justice and has graduated from several prominent law enforcement academies, including the FBI National Academy.  Mr. Taylor was also a course instructor at the Los Angeles Police Department Academy and was at

one time responsible for Detective Training at the LAPD.  Based upon these

credentials, the Court finds that Mr. Taylor is qualified to testify as an expert in the

area of police practices and procedures.  Whether Mr. Taylor's relevant experience

is sufficiently "current" is an issue that goes to the weight of his testimony rather

than admissibility and may be addressed on cross-examination at trial.

Nor is the Court persuaded that Mr. Taylor's testimony should be excluded

on the ground that it goes beyond the scope of proper rebuttal.  As a threshold

matter, the opinions proffered by Defendants' own police practices and procedures

expert, Michael Brasfield, are exceptionally broad.  The essence of these opinions

is that Defendants did nothing wrong during either encounter.  *See* ECF No. 34-1,

Ex. D, at 12 ("[I]t is my considered objective opinion that the defendants acted in a

reasonable, lawful and prudent manner in all aspects of both events.").  Mr. Taylor

takes the opposite view, opining that Defendants did a number of things wrong on

both occasions.  *See* ECF No. 34-1, Ex. B., at 13 ("The use of force by Spokane

police officers in both incidents fails the *Graham* analysis on all counts.  The force

used on Berra in both cases was objectively unreasonable.").  Although Mr. Taylor

provides a different mode of analysis, he does not appear to have strayed beyond

the scope of the issues raised by Mr. Brasfield.

In any event, the proper scope of Mr. Taylor's rebuttal opinions cannot be

determined until Mr. Brasfield has testified at trial.  If Defendants feel that Mr.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 32

Taylor has strayed beyond the scope of Mr. Brasfield's testimony in Plaintiff's

rebuttal case, they may raise a proper objection at that time.

Finally, the Court agrees that much of Mr. Taylor's anticipated testimony

invades the provinces of the jury.  The same is true, however, of Mr. Brasfield's

anticipated testimony.  Both experts stand prepared to testify about the "objective

reasonableness" of Defendants' actions under the totality of the circumstances.

Such testimony is improper because it offers a legal conclusion—*i.e.*, "an opinion

on an ultimate issue of law."  *Hangarter v. Provident Life and Accident Ins. Co.*,

373 F.3d 998, 1016 (9th Cir. 2004); *see also DeMerrell v. City of Cheboygan*, 206

F. App'x. 418, 426 (6th Cir. 2006) (unpublished) (expert not permitted to testify

that "it was objectively unreasonable for Officer White to shoot Mr. DeMerrell");

*Hygh v. Jacobs*, 961 F.2d 359, 362, 364 (2d Cir. 1992) (disapproving of expert

testimony in response to question about whether officer "acted in an objectively

reasonable manner" under the circumstances facing him); *Patrick v. Moorman*, 536

F. App'x. 255, 258 (3d Cir. 2013) (unpublished) (expert not permitted to testify

"about what a reasonable officer would have done" under the same circumstances).

In order to avoid invading the province of the jury, both experts should

confine their testimony to the issue of whether Defendants' conduct was <u>consistent</u>

<u>with prevailing standards in the law enforcement profession</u>.  *See Hangarter*, 373

F.3d at 1016 (expert's opinion that insurance company "deviated from industry

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 33

1   standards" in processing the plaintiff's claim sufficiently distinguishable from

2   ultimate legal issue of whether insurance company acted in bad faith); *see also*

3   *United States v. Perkins*, 470 F.3d 150, 160 (4th Cir. 2006) (police practices

4   experts permitted to testify that officer's use of force served no "legitimate" law

5   enforcement purpose); *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir.

6   2005) (expert permitted to testimony that police officers' conduct "fell below

7   accepted police practices").  By couching their opinions in these terms, the experts

8   can assist the jury in deciding the ultimate legal issue—whether Defendants' use of

9   force was objectively reasonable in light of the facts and circumstances confronting

10  them, *Graham*, 490 U.S. at 379—without directly testifying to that issue.

    Defendants' motion to exclude Mr. Taylor's expert rebuttal testimony is

11

12  denied with leave to renew during trial.

13  **IT IS HEREBY ORDERED:**

14      1. Defendants' Motion for Summary Judgment (ECF No. 35) is

15          **GRANTED in part** and **DENIED in part**.  Plaintiff's claims under 42

16          U.S.C. § 1983 for wrongful arrest are barred by *Heck v. Humphrey*, 512

17          U.S. 477 (1994) and are therefore **DISMISSED** <u>without</u> prejudice.

18          Plaintiff's remaining state and federal claims shall proceed to trial.

19      2. Defendants' Motion to Exclude Expert Testimony of Winthrop Taylor

20          (ECF No. 33) is **DENIED** with leave to renew at trial.

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 34

1    The District Court Executive is hereby directed to enter this Order and

2  provide copies to counsel.

3    **DATED** February 14, 2014.



4

5                                    THOMAS O. RICE
                              United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO
EXCLUDE EXPERT TESTIMONY ~ 35